**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ARCHER FREIGHT LLC, an Illinois<br>Limited Liability Company, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| -vs- | ) <br> ) | CASE No.: 2022-cv-06670 |
| CARRIER411 SERVICES, INC., a Florida<br>Corporation, | ) <br> ) <br> ) | Judge: Edmond E. Chang<br>Magistrate Judge: Jeffrey T. Gilbert |
| Defendant. | ) | **Jury Trial Demanded** |

## ARCHER FREIGHT LLC'S MOTION FOR A PRELIMINARY INJUNCTION

NOW COMES the Plaintiff, Archer Freight LLC ("Archer"), by and through its attorneys, ORLEANS CANTY NOVY, LLC and MOSLEY MARCINAK LAW GROUP, LLP, pursuant to FED. R. CIV. P. 65, and for its Motion for Preliminary Injunction, states as follows:

### FACTUAL SUMMARY

The Complaint and exhibits attached thereto filed in this case and incorporated by reference provide a lengthy explanation of the parties, background of the parties, details of this dispute, and specific facts supporting the motion for injunctive relief. Document #1. Plaintiff provides only a summary of key facts here.

Plaintiff is a motor carrier that transports cargo in interstate transportation. Plaintiff has motor carrier authority with the Federal Motor Carrier Safety Administration ("FMCSA"). *See* **Exhibit A**. Plaintiff's customers are freight brokers and shippers that require Plaintiff to transport goods in interstate commerce. Motor carrier authority with the FMCSA is required in order for Plaintiff to service its customers or provide services to potential customers. On or about August 2022, Defendant posted on its website statements claiming Plaintiff did not have motor carrier authority with the FMCSA. A copy of these statements are attached as **Exhibit B**. At all

1

relevant times since September 29, 2020, Plaintiff has had motor carrier authority with the FMCSA and currently has motor carrier authority with the FMCSA. Despite multiple requests, Defendant has refused to remove the false statements in Exhibit B from its website. Plaintiff's customers and prospective customers in the industry have ceased working with Plaintiff due to the false statements made by Defendant in Exhibit B.

## ARGUMENT

Continued posting of the false information on Defendant's website will result in irreparable harm and severe hardship to Plaintiff and its employees. The Defendant's actions threaten Plaintiff's economic viability and its ability to provide essential services to its customers and potential customers in the transportation industry. In addition to Plaintiff's economic viability, Defendant jeopardizes the livelihood of Plaintiff's employees, as the failure to gain new customers and the rejection of existing customers to use Plaintiff will result in unemployment of Plaintiff's employees.

Plaintiff seeks to (1) enjoin Defendant from posting information on its website stating that Plaintiff does not have motor carrier authority with the FMCSA; and (2) require Defendant to immediately correct the information on its website to provide that Plaintiff's application is not pending before the FMCSA and Plaintiff has motor carrier authority with the FMCSA. A preliminary injunction, therefore, is justified pursuant to FED. R. CIV. P. 65. Injunctive relief is both appropriate and necessary to avoid the infliction of irreparable harm upon Archer, its customers, and its employees.

"A party seeking a preliminary injunction must demonstrate that (1) the moving party has a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) the moving party will suffer irreparable harm without injunctive relief; (4) the irreparable harm

suffered without injunctive relief outweighs the irreparable harm the defendant will suffer if the injunction is granted; and (5) the injunction will not harm the public interest." *Rust Environment & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1213 (7th Cir.1997) (citing *Nalco Chemical Co. v. Hydro Technologies, Inc.*, 984 F.2d 801, 802 (7th Cir.1993); *Mil–Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir.1996)). "In order to prevail, the plaintiff must satisfy each element of this five-part test." *Id.* (citing *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386–388 (7th Cir.1984)). Plaintiff respectfully requests the Court hold a hearing at the earliest possible time after notice to the Defendant. Defendant is currently engaged in defamatory conduct, *inter alia*, and Plaintiff will continue to experience irreparable injury due to these violations by Defendant absent a Preliminary Injunction by the Court.

"The purpose of preliminary injunctive relief is 'to minimize the hardship to the parties pending the ultimate resolution of the lawsuit.'" *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998) (citing *Faheem–El v. Klincar*, 841 F.2d 712, 717 (7th Cir.1988)). "The threshold consideration in a motion for a preliminary injunction is the moving party's likelihood of success on the merits of the underlying claim." *Id.* (citing *Rust Environment & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1213 (7th Cir.1997)). Based on the following, Archer meets all five requirements for the granting of a preliminary injunction.

## A. The Likelihood that Plaintiff Will Succeed on the Merits

Archer has demonstrated that it has an ascertainable right which needs protection, it will experience irreparable harm absent a preliminary injunction, and that serious and substantial questions have been raised sufficient to make this issue a fair ground for litigation. As explained above and in more detail in the Complaint and Exhibits, Plaintiff has provided evidence through Exhibits that it in fact has motor carrier authority with the FMCSA and has had uninterrupted

motor carrier authority with the FMCSA since September 29, 2020. *See* **Exhibit A**. Plaintiff has also submitted evidence that Defendant has publicized to companies and individuals in the transportation industry that Archer does not have motor carrier authority. As a result of these false statements, Plaintiff has experienced and will continue to experience harm and damages. Based on this information, Plaintiff will inevitably prove that the Defendant has defamed Plaintiff and such defamation has resulted in damages to the Plaintiff.

As an initial matter, "a statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with her." *Bryson v. News America Publications, Inc.*, 174 Ill.2d 77, 87, 672 N.E. 2d 1207 (1996) (citing *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 10, 180 Ill.Dec. 307, 607 N.E.2d 201 (1992); Restatement (Second) of Torts § 559 (1977)). Additionally, there are two types of defamation under Illinois law—*per se* and *per quod*. Under Illinois common law, there are four categories of statements which are considered actionable per se and give rise to a cause of action for defamation without showing special damages. Those four categories are: "(1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business." *Id.* at 88-89 (citing *Kolegas*, 154 Ill.2d at 10–11, 180 Ill.Dec. 307, 607 N.E.2d 201). In this instance, the statements made by Defendant fall under the fourth category—words that prejudice a party, or impute lack of ability, in his or her trade, profession or business. Specifically, Plaintiff is a motor carrier with authority under the FMCSA to haul shipments in interstate transportation. Defendant, through its statements, claims that Plaintiff is not licensed by the FMCSA to haul

shipments in interstate transportation. Based on this information, Defendant's statements impute a lack of ability by Plaintiff in its trade, profession, or business. Therefore, Defendant's statements constitute defamation *per se*, and do not require the showing of special damages as the statement is harmful on its face. *See Green v. Rogers*, 234 Ill.2d 478, 917 N.E. 2d 450 (2009).

"In order to state a defamation claim, a plaintiff must plead facts demonstrating that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of the statement to a third party, and that the publication caused damages to the plaintiff." *Tirio v. Dalton*, 2019 IL App (2d) 181019, ¶ 58, 437 Ill.Dec. 671, 144 N.E.3d 1261 (citing *Stone v. Paddock Publications, Inc.*, 2011 IL App (1st) 093386, ¶ 24, 356 Ill.Dec. 284, 961 N.E.2d 380). In this instance, Defendant has made false statements about the Plaintiff claiming that Plaintiff does not have motor carrier authority with the FMCSA. However, as provided by evidence in the form of exhibits, Plaintiff has motor carrier authority with the FMCSA and has had uninterrupted motor carrier authority with the FMCSA since September 29, 2020. *See* Exhibit A. Moreover, Defendant has posted its statements to its website, which are viewed by third parties in the transportation industry, including current customers and potential customers of Plaintiff. Finally, while the specific amount of damages is not currently ascertainable by Plaintiff, Plaintiff has experienced damages in the form of customers and potential customers refusing to do business with Plaintiff based on Defendant's website posting.

In sum, Plaintiff is seeking a preliminary injunction to require Defendant to remove its false information provided on Defendant's website regarding Plaintiff's motor carrier authority. There can be no question that Plaintiff is likely to prevail.

**B. Inadequate Remedies at Law**

The second element courts in Illinois analyze is whether Plaintiff has other adequate remedies at law. Defendant will likely point towards the fact that Plaintiff seeks monetary damages in the form of lost profits, which can compensate Plaintiff for its loss, which may be achieved through a civil suit. However, Plaintiff anticipates difficulty in assessing all losses which have resulted from the false statements publicized by Defendant. Therefore, a legal remedy may prove inadequate. In the *Travelport* case, the plaintiff similarly noted that the legal remedy may prove inadequate based on the difficulty in ascertaining the exact value of damages to the plaintiff in the *Travelport* case. *See Travelport*, 2011 IL App (1st) 111761 at ¶ 44. In that case, potential customers would search for travel packages to book flights. *See id.* Because the defendant frustrated that ability for customers to use a certain website to book flights, customers would look to other online agencies instead of the plaintiff's. *See id.* Similar to the *Travelport* case, brokers and shippers in the industry vet motor carriers before engaging in business with such motor carriers. Defendant specifically holds itself out to the public as a tool to vet carriers. In fact, Carrier411, through its website states that "[m]ore than 3,000 freight brokers and shippers rely on our platform every day for carrier selection, including 97 of the top 100 brokers based on net income." *See* **Exhibit C**. If Defendant, on its website, claims Plaintiff does not have motor carrier authority with the FMCSA, then potential customers of Plaintiff will find another motor carrier to haul loads or service that potential customer's needs. It will be difficult to ascertain the specific amount of lost revenue from brokers and shippers viewing the Carrier411 website and deciding to use another motor carrier instead of Archer. Therefore, the inadequate remedies at law element also favors issuance of a preliminary injunction.

## C. Irreparable Harm to Plaintiff

As alleged more fully above and in Archer's Complaint and supporting exhibits, if Defendant's statements remain on Defendant's website, Plaintiff will continue to experience significant losses of revenues, immediate transfer of numerous customers from Plaintiff to other motor carriers in the industry, an inability to perform work for existing customers, and potentially lose its ability to operate the business and employ its employees. Plaintiff has already received multiple refusals to do business based on the posting of the false statements by Defendant. Defendant's website is specifically designed to warn brokers and shippers of motor carriers in the industry that do not have motor carrier authority or have issues with motor carrier authority. *See* **Exhibit C**. Defendant has validity in the transportation industry, and statements made by Defendant via its website or otherwise have consequences for motor carriers in the industry. Customers of Defendant pay a subscription to learn information about motor carriers to avoid contracting with motor carriers that have issues with the FMCSA. By Defendant claiming to its customers that Archer does not have motor carrier authority, Defendant is providing this information so that Defendant's customers will not contract with Archer or engage in business with Archer. Preventing Plaintiff from gaining new customers or preventing Plaintiff from performing work for its existing customers will put Plaintiff out of business.

These are precisely the type of irreparable and unnecessary harms that injunctive relief is intended to prevent. Courts in Illinois have found that a defendant's actions that impair the plaintiff's business relations or goodwill may constitute irreparable harm. *See Travelport, LP v. Am. Airlines, Inc.*, 2011 IL App (1st) 111761, ¶ 40, 958 N.E.2d 1075, 1085 (2011). The Court in *Travelport* found that while the Plaintiff could not readily measure the amount of business it would lose due to new customers using other agencies or measure its loss of current customers,

the Plaintiff could still show irreparable harm. At this point, Plaintiff cannot reasonably calculate the resulting loss of current and prospective customers and all of the lost bookings it would have made with shippers and brokers due to Defendant's statements. However, Plaintiff has lost and will continue to lose customers at all times that the false statements are left on Defendant's website. Without a preliminary injunction, Plaintiff's business will remain in jeopardy and Plaintiff will continue to suffer irreparable harm.

### D. Irreparable Harm to Defendant

As stated above, the irreparable harm to the Plaintiff is evident. Conversely, Defendant cannot point to any harm it would sustain if the statements are immediately taken off its website, while this case is heard. While Defendant could possibly point to its rights under the First Amendment, there is no constitutional right to defame. *See Hadley v. Doe*, 2014 IL App (2d) 130489, 12 N.E.3d 75, 82 (2014) ("Additionally, it is well established that these first-amendment principles apply to free speech on the internet. . . . This being said, there is no constitutional right to defame . . . ."). As shown above, Defendant has engaged in defamatory conduct. While Defendant has the right to freedom of speech, Defendant's defamatory statements on its website are not protected and should not be considered by this Court in potential irreparable harm to Defendant.

### E. Harm to Public Interest

Finally, there is no harm to the public interest with the granting of the preliminary injunction. The public has a right to receive accurate information regarding the Plaintiff. As stated, the posting of the information on Carrier411 dissuades the transportation industry and current and potential customers of Plaintiff from utilizing Plaintiff's services. By granting the preliminary injunction and requiring removal of the defamatory information, the public will

8

receive accurate information on the Plaintiff. Accordingly, the public interest is in fact, better served through the granting of a preliminary injunction.

## **CONCLUSION**

WHEREFORE, the Plaintiff, Archer Freight, LLC, prays this Honorable Court enters a preliminary injunction in its favor, and against Defendant Carrier411 to remove the defamatory statements from its website, and for any other relief this Court deems just and proper.

Respectfully Submitted,
ARCHER FREIGHT LLC, Plaintiff,

/s/ Jason Orleans
One of its Attorneys

Quinn P. O'Grady (ARDC #6330236)
Jason Orleans (ARDC #6258048)
ORLEANS CANTY NOVY, LLC
65 E. Wacker Place, Suite 1220
Chicago, IL  60601
Telephone: (847) 625-8200
qogrady@ocnlaw.com
jorleans@ocnlaw.com

Fred Marcinak
Lesesne Phillips
Mosley Marcinak Law Group, LLP
P.O. Box 26148
Greenville, SC 29616
Fred.marcinak@momarlaw.com
Lesesne.phillips@momarlaw.com
*Pro hac vice pending*